**UNITED STATES of America, Plaintiff-Appellee,**

v.

**George E. PHILLIPS, Defendant-Appellant.**

**No. 11087.**

United States Court of Appeals Seventh Circuit.

Dec. 2, 1954.

Rehearing Denied Jan. 12, 1955.

3, for the year 1946; count 4, for the year 1947; count 5 charged that defendant as president of a corporation, Phillips Company, Inc., wholly owned by defendant except for qualifying shares, caused the evasion of taxes due by the corporation for the year 1944, and count 6, that the defendant caused evasion of taxes of the same corporation for the period of January and February, 1945. On April 10, 1951, defendant entered a plea of not guilty and there followed a series of legal maneuvers between counsel for the respective parties. The trial commenced October 22, 1953, to a jury which returned a general verdict finding defendant guilty as charged. Upon such verdict the court, on November 16, 1953, entered judgment providing for defendant's imprisonment for a period of five years and imposing a fine in the sum of $10,000. From this judgment defendant appeals to this court.

Many issues are raised and argued here as grounds for reversal but, in our view, the only questions which need be given serious consideration are those which relate to the giving and refusal of certain instructions, and the admission and exclusion of evidence.

■ The conclusion which we have reached after a lengthy study and investigation of the record makes it unnecessary to relate more than a brief outline of the factual situation. Particularly is this so in view of the fact that there is no denial by the defendant, in fact it is tacitly conceded that there were large deficiencies in gross income as reported for the taxable years in question. More than that, it is hardly open to question that the proof was sufficient to justify a submission of the case to the jury. A statement by this court in United States v. Raub, 7 Cir., 177 F.2d 312, in which we reversed a judgment of conviction on the same charge as is made here, is appropriate. We stated, at page 314:

> "We conclude that if the only question here were as to the sufficiency of the evidence we would have no difficulty in affirming the judgment

Thomas Dodd Healy, Harold Stickler, and W. Donald McSweeney, Chicago, Ill., for appellant.

Robert Tieken, U. S. Atty., Chicago, Ill., Irwin N. Cohen, Chicago, Ill., John Peter Lulinski, Chicago, Ill., Mitchell S. Rieger, Evanston, Ill., Edward J. Calihan, Jr., Asst. U. S. Attys., Chicago, Ill., for appellee.

Before MAJOR, SWAIM and SCHNACKENBERG, Circuit Judges.

MAJOR, Circuit Judge.

A six-count indictment was returned against defendant, George E. Phillips, on March 2, 1951. Each count charged that defendant "did wilfully and knowingly attempt to defeat and evade" taxes, in violation of Section 145(b) of the Internal Revenue Code, 26 U.S.C.A. § 145(b). Count 1 charged a violation for the year 1944; count 2, for the year 1945; count

of conviction. However, a much more serious and difficult question is presented with respect to the instructions under which the case was submitted to the jury."

And so here we are presented with the problem as to whether the defendant had a fair and impartial trial, that is, a trial free from prejudicial error, and this we must decide irrespective of what we might otherwise think of the case.

During the years in question and prior thereto, defendant was engaged in the manufacture of jams, preserves and syrups, some of the time in his individual capacity and at other times by a corporation of which he was the owner and manager. Sales were made to restaurants in Chicago and its suburbs by truck driver-salesmen and to wholesale and retail customers throughout the midwest. Among his employees were William Freitag, his bookkeeper, and Blanche O'Donnell, an assistant bookkeeper, both of whom were called as government witnesses. The defendant also employed at intervals outside accountants and tax experts who made or assisted in making his returns for the years in question, including John Bertrand and Nels Tessem, also called as government witnesses.

The government relied upon two theories in proving its case, (1) that the defendant received a large amount of money from the sale of his products which was not included in his gross income as reported in his returns, and (2) the so-called net worth theory. The employees of defendant as government witnesses testified that acting under his instructions, a certain portion of income was not shown on the books from which the tax returns were prepared but that it was recorded in a special accounts receivable ledger, with the amount so recorded deposited in a special account in the bank, either in the name of defendant individually or in that of his corporation. The monies thus received and handled are referred to throughout the record as segregated business receipts. These so-called segregated receipts which were not reported resulted in the deficiency in gross income as reported. This segregated income was invested by defendant in real estate, the rental income from which was shown in his returns.

It was and is defendant's contention that this course was pursued in good faith on the advice of his attorney, George S. Porikos. Defendant did not testify and offered no evidence other than that of character witnesses. Thus, defendant relies upon evidence elicited from government witnesses, either on direct or cross-examination. Defendant does not claim, of course, that the asserted fact that he acted on the advice of counsel is a bar to the charge, but it is strenuously urged that it was a circumstance to be taken into consideration by the jury on the issue of defendant's good faith or, more accurately, that it was a circumstance which the jury was entitled to consider on the charge that he "did wilfully and knowingly attempt to defeat and evade" taxes. Notwithstanding, the court refused to instruct on the advice of counsel issue, which is here urged as prejudicial error.

In view of the concessions contained in the government's brief we think there is no occasion to relate in detail the evidence under discussion. Typical is the testimony of defendant's bookkeeper, Freitag, called as a government witness, who stated that the segregated business receipts were recorded in a special accounts receivable ledger kept by O'Donnell and that they were not reflected in the general ledger from which the tax returns were prepared. On direct examination, questions were asked and answered as follows:

"Q. Did you have a conversation with Mr. Phillips, Mr. Freitag, just about the time this practice of separating orders into these two categories began? A. Yes, I did.

"Q. Now, would you please state what Mr. Phillips told you about this practice? A. He said he was acting on the authority of his attorney and following his advice.

"Q. What else did he say? A. He said he was acting in his—that he had the authority, I mean he was acting on the attorney's statement that he could put that money in a special account and use it for the purpose of buying buildings.

"Q. What else did he say about it? A. He said that all of the money that was recorded in the special ledger would be picked up and deposited, and it would be reflected in his personal income tax.

"Q. Did he mention the name of the lawyer? A. Yes, he did.

"Q. What was the name? A. Mr. Porikos."

That government's counsel recognized this testimony as important is evidenced by the fact that at that point a request was made that the jury and the witness be excused. Thereupon, government's counsel represented that the testimony came as a surprise, that the witness was hostile and requested that the court call the witness as its own, with permission to the government to cross-examine. The record does not disclose any ruling by the court on this request but it is inferable that it was denied because the government proceeded with the examination of the witness as its own. On cross-examination the witness testified that the defendant said to him in substance that at about the time the special account and special ledger were segregated, he (defendant) was acting on the advice of an attorney named Porikos who had advised him that he could segregate some of his business sales, invest them in real estate and account for the proceeds of the real estate when sold.

Testimony to the same effect was given by other government witnesses and was admitted on the theory that it was a part of the *res gestae*. The testimony of the witness Tessem, also a government witness, falls in a different category insofar as concerns the reasons for its admission. Tessem was a tax expert who had formerly been employed for many years as an agent by the Treasury Department and who was employed by defendant in connection with his tax affairs and to prepare his tax return for 1947. The witness was informed by defendant regarding the segregation of business receipts in 1947 and earlier years, and was asked on cross-examination what the defendant had told him regarding the practice which had been followed. The court sustained the government's objection to this question. Upon an offer of proof by defendant's counsel as to what the witness would testify, the government withdrew its objection and the court permitted the question to be answered. He testified that the defendant told him in substance that since the year 1944, he had been separating or segregating a part of his income and had been investing the proceeds in real estate, reporting the income from the same on his personal returns, and that he had deferred reporting further income until he sold the buildings. Defendant followed this practice, so he told the witness, on the advice of attorney Porikos. The witness informed the defendant that these segregated accounts must be included in his tax return, which was done with defendant's consent for the year 1947.

Defendant's assistant bookkeeper, O'Donnell, at the request of the government was called as a court witness. For some reason not explained, the court sustained an objection by the government when it was sought to show on cross-examination that she had been told by defendant that he was acting under the advice of his lawyer. This was the same character of testimony which had been elicited from the witness Freitag by the government itself and from the witness Tessem on cross-examination, after the government's objection had been withdrawn. We need not dwell further upon this character of evidence emanating from government's witnesses because the government in its brief states, "The record is replete with references by Government witnesses concerning statements made to them by the defendant that he

was following the advice of an attorney." In response to defendant's contention that much evidence of this character was suppressed, the government in its brief states, "The record to the contrary shows affirmatively that the Court, the defendant, and the jury were aware of the alleged advice." And again, the government in its brief states, "It is well to remember that the only evidence of defendant's reliance on advice adduced at the trial below was by Government witnesses. * * * The testimony of each uniformly was that the defendant told each of them he was acting on advice of counsel."

■ Defendant offered an instruction (referred to as No. 13), reading as follows:

"There is evidence in this trial that some business receipts were segregated from receipts used for ordinary business purposes, and that such receipts were invested in real estate, and that the net rental income from the said real estate was reported on the individual income tax returns of Mr. Phillips for the years in question, and that the segregated receipts were not reported on any tax returns in the taxable year when received because Mr. Phillips relied upon the legal advice of Attorney George Porikos in deferring the reporting of segregated receipts until after he had sold the real estate.

"You are advised that the defendant, Mr. Phillips, was entitled to act in good faith upon the advice of his attorney to such effect, whether or not such advice was correct as a matter of law.

"You are further advised that unless you find from the evidence beyond a reasonable doubt that the defendant was not acting upon such legal advice and in good faith, then you must find the defendant not guilty as to each and every count of the indictment."

The sole reason given by the court for its refusal was, "I will refuse No. 13, and my reason for doing it is in the court's opinion there is nothing in the record to support the instruction. If the defendant wanted to avail himself of that defense, he should have called Mr. Porikos and had him testify to that effect, as his own witness." Thus it is inherent in this statement, given as the reason for denying the instruction, that the defendant was not entitled to an instruction based upon favorable testimony given by government's witnesses, but that as a prerequisite to his right to such an instruction, there must be testimony coming from his side of the case. We think this was clearly an erroneous idea, the effect of which was to shift the burden of proof.

■ The government's attempt to justify the refusal of the court to instruct on the advice of counsel theory is not convincing; in fact, in our view, it has little if any merit. The government, presumably in an attempt to show that no harm was done, quotes as follows from the argument of defendant's counsel to the jury:

" 'On the other hand, if you believe Mr. Tessem, if you believe the statement of Mr Freitag, and the others who testified that he was acting under the advice of Mr. Porikos, then he did not have the intent to wilfully evade. And it is not a crime to avoid. Whatever action you take on your tax returns under the advice of a lawyer or accountant, even though it be wrong it is not a crime, not at all.' "

An argument to a jury, however, on a legal issue, unsupported by an instruction to which the defendant was entitled, constitutes an aggravation rather than a mitigation of the harmful effect of the court's refusal to instruct. The government relies upon the well established rule that the instructions must be considered as a whole and, when so viewed, the jury was amply instructed on the issue of good faith. This argument does nothing more

than beg the question under discussion. Particularly is this so when the court instructed the jury, "Nor would mere negligence or carelessness, unaccompanied by bad faith, render the defendant guilty under the six counts." The jury was thus instructed, notwithstanding there was no contention and no proof that the defendant failed to report total gross income through either negligence or carelessness, but the court refused to instruct as to the effect which the jury might ascribe to the government's proof that his failure to so report was occasioned by the advice which he had received from his lawyer.

■ The government in its numerous approaches to the issue under discussion always reverts to its primary thesis, that the defendant was not entitled to an instruction on the advice of counsel theory in the absence of proof offered by the defendant. In its brief it states, "In the absence of a defense made under the doctrine of good faith reliance on the advice of others by a defendant, no instruction would appear to be necessary," and "The lawyer or lawyers who so allegedly advised the defendant were not called on his behalf." This argument contravenes a fundamental proposition of law, that is, that there was no burden on the defendant to show good faith. The burden was upon the government to prove beyond a reasonable doubt that the defendant "did wilfully and knowingly attempt to defeat and evade" taxes as alleged, and that burden never shifted to the defendant. United States v. Fenwick, 7 Cir., 177 F.2d 488, 492.

Finally, the government attempts to justify the alleged error thus, "Suffice it to say that under the instructions as given, the jury was not precluded from considering the evidence that the defendant purportedly acted on the advice of counsel." The statement is without merit. Nobody claims that the jury was so precluded. The point is that the jury was not instructed by the court that it had a right to consider such evidence on the issue of good faith.

■ We think the government's contention, apparently embraced by the trial court, that a defendant is not entitled to an instruction embodying a theory merely because it is predicated upon proof adduced by the government, is not the law. A case closely in point is Tatum v. United States, 88 U.S.App.D.C. 386, 190 F.2d 612, wherein evidence relative to defendant's sanity was offered by the government. A judgment of conviction was reversed because that issue, under proper instructions, was not submitted to the jury, even though the trial court was not requested to do so. The court stated, 190 F.2d at page 615:

> "But as soon as 'some evidence of mental disorder is introduced, the prevailing rule in most jurisdictions is that sanity, like any other fact, must be proved as part of the prosecution's case beyond a reasonable doubt.'"

The court on the same page quoted from Davis v. United States, 160 U.S. 469, 487, 16 S.Ct. 353, 358, 40 L.Ed. 499:

> "'Strictly speaking, the burden of proof * * * is on the prosecution from the beginning to the end of the trial and applies to every element necessary to constitute the crime. * * * the vital question from the time a plea of not guilty is entered until the return of the verdict, is whether upon all the evidence, by whatever side adduced, guilt is established beyond reasonable doubt.'"

Defendant cites three cases in support of his contention that it was reversible error not to instruct on defendant's theory of the evidence as to a good faith. Haigler v. United States, 10 Cir., 172 F.2d 986; United States v. Raub, 7 Cir., 177 F.2d 312, and Wardlaw v. United States, 5 Cir., 203 F.2d 884.

In the Haigler case, the court reversed a conviction for income tax evasion on the ground that the defendant did not have a fair trial. The court stated, 172 F.2d at page 988:

> "On cross-examination, counsel for the appellant sought to elicit

from the internal revenue agents, Haigler's explanation to them for not having returned the income in question. The government objected to this inquiry on the grounds that Haigler was seeking to prove his 'side of the story by government witnesses.'"

And again on the same page:

"The court, however, sustained objections to any testimony concerning his understanding of the law applicable to his income tax liability, on the grounds that his intent would be judged by his acts, and not by what he understood to be their consequences."

In commenting on the rulings thus made, the court on the same page stated:

"Unconvincing as it may be, this testimony was plainly admissible as bearing upon the essential element of intent to commit the offense charged, and we think it was error to exclude it."

In the Raub case (by this court), the defendant contended that he had acted upon the advice of lawyers and certain tax officials. The opinion sets forth, 177 F.2d at page 315, an instruction, which was given to the jury, the following portion of which was not challenged by the government:

"'You should consider that evidence [relating to defendant's consultation with counsel] in connection with all the other evidence in determining whether or not he wilfully and intentionally entered into this scheme for the purpose of evading his taxes.'"

■ In the Wardlaw case, also reversed because of an improper charge to the jury, the defendant was a lawyer who interposed the defense that "he acted under a bona fide misconception of the income tax law." The court, apropos to this defense, stated, 203 F.2d at page 885:

"It is now settled that 'willfully', as used in this offense, means more than intentionally or voluntarily, and includes an evil motive or bad purpose, so that evidence of an actual bona fide misconception of the law, such as would negative knowledge of the existence of the obligation, would, if believed by the jury, justify a verdict for the defendant. [Citing many cases.]"

Again the government, in response to these cases, falls back upon its stock argument. It states:

"It is thus apparent that in each of the cited cases, the defendant, by his own testimony and testimony of others, placed in issue his reliance on claimed advice."

It then cites United States v. Phelps, 8 Cir., 160 F.2d 858, 874, and Meyer v. United States, 7 Cir., 258 F. 212, 216, for the proposition that a court will not instruct on "a defense not made by the defendant." These cases furnish no support for the contention. They hold nothing more than that the court will not instruct upon a theory unsupported by evidence. Certainly they do not indicate, even by inference, that the evidence must come from the defendant's side of the case.

■ We can think of no more important circumstance as bearing upon the crucial issue in a criminal prosecution for tax evasion than that the defendant acted in good faith upon the advice of an attorney. And where there is proof that he did so, irrespective of whether it comes from the witnesses of the government or those of the defendant, he is entitled to have the issue of his asserted good faith reliance submitted to the jury, under instruction, to be considered with all the other circumstances in proof in arriving at a decision as to whether the defendant "did wilfully and knowingly attempt to defeat and evade" taxes. It is not the province of this court, and neither was it that of the trial court, to appraise the reasonableness or unreasonableness of the evidence relative to the advice of counsel theory. As was stated

in Tatum v. United States, 88 U.S.App. D.C. 386, 190 F.2d 612, 617:

> "That is unnecessary, for 'in criminal cases the defendant is entitled to have presented instructions relating to a theory of defense for which there is any foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility.' "

■ Inasmuch as the judgment must be reversed, we need not discuss in detail the criticism directed at the court's charge to the jury. The argument in the main is that by the instructions the burden was shifted from the prosecution to the defendant. We think there is some merit in the criticism. For instance, it is stated in the instructions, "Even though you should believe from the evidence that the returns filed by the defendant were incorrect, if you further believe that he acted in good faith in making such returns, then the defendant is not guilty of the offenses charged in the indictment." This statement standing alone undoubtedly would indicate to the jury that the burden was upon the defendant to establish good faith as a basis for acquittal. As previously shown, however, no such burden was upon the defendant. On the contrary, the burden was upon the government to prove defendant's bad faith, or, in other words, to prove wilfulness and knowledge on his part, beyond a reasonable doubt. When the charge is considered as a whole, however, as it must be, we think much of defendant's criticism evaporates. At any rate, we need not under the circumstances give any further consideration to this phase of the situation.

■ We perhaps should not conclude without mention of another matter which under the circumstances would be difficult to excuse as non-prejudicial error. The defendant called eight character witnesses who testified as to his good reputation among his friends and associates for honesty, integrity and fair dealing. On cross-examination of one of such witnesses, a Mr. Gallagher, the following questions were asked by the government:

> "Did you hear that in the year 1934, well, specifically, that in January of 1934, in September of 1934, and in October of 1934, Mr. Phillips was arrested for issuing checks to defraud. Did you ever hear of that?
>
> \* \* \* \* \* \*
>
> "Did you hear that in July of 1934 and in September of 1934, Mr. Phillips had been arrested for obtaining money under false pretenses? \* \* These are two additional. Did you ever hear of that?"

Defendant objected to these questions on the basis that they were highly prejudicial, which objection was overruled by the court. To each question the witness answered, "No," that is, that he had never heard of the charges implied by the questions. At the time these questions were thus propounded and answered, no instruction was given to the jury as to their relevancy or as to the purpose for which they could be considered. The record is entirely devoid of any showing as to whether the defendant had in fact been arrested, as implied by the questions. Neither does the record disclose except by vague inference that the court was at any time advised that the government was prepared to prove such arrests. The most that is shown is that after the conclusion of the trial, in a colloquy between the court and counsel on defendant's motion for a new trial, the court in response to an inquiry by government's counsel stated that he recalled that there was submitted to him during the trial the Michelson case, Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168.

■ More than that, the final charge to the jury made no reference to the cross-examination of this character witness or the purpose for which it was permitted. It is true that the government tendered an instruction (No. 11–A) purporting to state the reason for and purpose of the cross-examination. The instruction as proposed was objected to by

the defendant on the basis that it assumed a number of matters which were not in proof, including the assumption that the defendant had actually been arrested, as implied by the questions. The court refused to give the instruction and in doing so stated, "There is not any proof in the case that could be produced that defendant was arrested." It is now argued by the government that the court's refusal to give the instruction under the circumstances forecloses the defendant from claim of error on appeal. With this we do not agree. In the first place, it is doubtful if any instruction could have been given at that late time which would have dissipated the harmful effect of the cross-examination. In the second place, when the instruction was refused by the court because of its form, the duty devolved upon the government to tender a proper instruction. Upon its failure to do so, we think it was the duty of the court of its own volition to instruct the jury as to the purpose for which the cross-examination was permitted, as well as the extent to which it could be considered by the jury.

Both sides rely upon the Michelson case in support of their positions on the cross-examination under discussion. It is true the court in that case approved a similar cross-examination under the facts and circumstances before it. There, however, the trial court at the time of the occurrence twice instructed the jury as to the limited purpose for which the examination could be utilized and again so instructed the jury in its final charge, see footnote to Michelson, supra, 335 U.S. at pages 472, 473, 69 S.Ct. at pages 216, 217. The Supreme Court, referring to the precautionary means employed by the trial court, stated 335 U.S. at page 480, 69 S.Ct. at page 221:

"Wide discretion is accompanied by heavy responsibility on trial courts to protect the practice from any misuse. The trial judge was scrupulous to so guard it in the case before us. He took pains to ascertain, out of presence of the jury, that the target of the question was an actual event, which would probably result in some comment among acquaintances if not injury to defendant's reputation. He satisfied himself that counsel was not merely taking a random shot at a reputation imprudently exposed or asking a groundless question to waft an unwarranted inuendo into the jury box."

In the instant case no such precautionary measures were taken. In fact, there were no precautionary measures of any kind. For aught that is disclosed by the record, the jury was at liberty to consider the damaging implication inherent in the government's cross-examination for any and all purposes.

We need not extend this opinion by discussion of other issues raised on this appeal. We have shown enough, so we think, to require a reversal of the judgment. In so concluding, we are not unmindful of the effort and time which have been expended in the prosecution of the case. Regardless of all other questions and considerations, however, it is the heavy responsibility of a reviewing court to ascertain if a defendant has had a fair and impartial trial, that is, a trial free from prejudicial errors. In the instant case, it is our considered judgment that the defendant did not have such a trial.

The judgment appealed from is, therefore, reversed, and the cause remanded for a new trial.