**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Joe S. DUNCAN and Michael M. Downing, Defendants–Appellants.**

Nos. 87–5896, 87–5897.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 23, 1988.

Decided June 23, 1988.

Rehearing Denied in No. 87–5897 Sept. 1, 1988.

year 1982 of violating 26 U.S.C. §§ 7206(1) and 7206(2), which prohibit the making and the preparation of a tax return containing a false statement as to a material matter. The 1982 tax return in question contained two separate and distinct statements which the indictment alleged were false. The structure of the indictment and ambiguous instructions given by the judge in response to a question from the jury combined to create a substantial likelihood of jury confusion, with the result that it is unclear which of the statements the jurors found to be false and whether their verdict on either was unanimous.

The appeal raises the question whether a trial judge should go beyond the usual general unanimity charge to give an augmented instruction that the jurors must agree unanimously on a particular false statement as an underlying predicate for conviction. We hold that due to a number of factors—including pretrial motions specifically pointing out the problem and a mid-deliberation question from the jury raising a genuine possibility that conviction could occur as the result of different jurors using a different false statement as the underlying factual predicate for guilt—the District Court was sufficiently apprised of the specific unanimity problem that it should have given an augmented instruction that the jurors must all agree on the willful falsity of at least one, and the same one, false statement.

In addition, we hold that there was sufficient evidence presented that the District Court should have instructed the jury on taxpayer Duncan's theory that he lacked criminal intent because he relied in good faith upon the professional opinion of a certified public accountant, codefendant Downing.

### I. *The Indictment and Proof*

The indictments of Duncan and Downing grew out of an extensive investigation into the collapse of the so-called Butcher banking empire in East Tennessee in the early 1980's. C.H. Butcher, Jr., a principal figure in the Butcher banks, was the third

Steven Oberman (argued), W. Zane Daniel, Charles W.B. Fels (argued), Ritchie, Fels and Dillard, Knoxville, Tenn., for defendants-appellants.

Martha P. Rogers, Dept. of Justice, Tax Div., Criminal Div., Michael L. Paup, Chief, Appellate Section, Tax Div., Dept. of Justice, Washington, D.C., Michael D. Durney, William S. Rose, Jr., Gary R. Allen, Robert Lindsay, Alan Hechtkopf (argued), for plaintiff-appellee.

Before ENGEL, Chief Judge[*], MERRITT and KENNEDY, Circuit Judges.

MERRITT, Circuit Judge.

In this false statement tax case, defendant Duncan and defendant Downing, who was Duncan's tax preparer, were acquitted for the tax year 1981 and convicted for the

[*] The Honorable Albert J. Engel assumed the duties of Chief Judge effective April 1, 1988.

person named in the indictment with appellants. The indictment charged Butcher, Duncan, and Downing with conspiring to defraud the United States by impeding the ascertainment and collection of income taxes in violation of 18 U.S.C. § 371 (Count One); charged Duncan with violating 26 U.S.C. § 7206(1) by making false returns for the years 1981 (Count Two) and 1982 (Count Three); and charged Downing with violating 26 U.S.C. § 7206(2) by aiding in the preparation of false returns for the years 1981 (Count Four) and 1982 (Count Five). The jury acquitted Duncan and Downing on all counts except for counts for the year 1982. The 1982 tax return contained two allegedly false statements—that $115,000 of income received was a capital gain rather than ordinary income, and that Duncan had paid $8,800 in interest when he had not.

Butcher, who had earlier pleaded guilty to Count One, testified for the Government. His testimony, and the Government's theory, described a scheme whereby Butcher sought to gain control of the Knox Federal Savings & Loan, a mutual S & L over which Duncan's family exercised partial control. In return for the assistance of the Duncans and of the other controlling family, named Curtis, Butcher agreed to undertake separate financial transactions favorable to each family. David Crabtree, a close associate of Butcher, testified that, acting as a nominee for Butcher, he bought the building that housed Knox Federal from the Curtises for a "significantly inflated" price of $525,000 as an "aspect of buying the [S & L] Board seats." Defendant Duncan, meanwhile, had about $310,000 in indebtedness to the United American Bank (UAB) of Knoxville, which Butcher's family controlled. Some $90,000 of this debt was guaranteed by Duncan's brother Jim. Butcher testified that to enlist the Duncans' support,[1] he and Crabtree, with Downing as a middleman, devised an arrangement to write off defendant Duncan's debt.

On October 30, 1981, the Knox Federal board of directors, which to that point was majority-controlled by the Duncans and Curtises, was expanded to include a number of Butcher associates. On November 6, 1981, at Downing's insistence, Butcher wrote a letter confirming the arrangement that would relieve defendant Duncan's debt and Jim Duncan's guarantee. Addressed to defendant Duncan, it said:

The purpose of this letter is to confirm my commitments to you to provide sources of income during 1981 and/or 1982 in a manner which can hopefully be to your best advantage for income tax purposes in the aggregate of approximately $311,500, which in turn will be utilized by you to discharge existing indebtedness to UAB of Knoxville, which is represented by promissory notes dated August 25th, 1980 and June 30th, 1981.

Tr. 367.

Butcher testified that the $311,500 represented a "fee" to Duncan for being "my conduit to a smooth transition" at the S & L. Crabtree testified that at Butcher's request, he studied Duncan's financial situation and determined that the best way to avoid taxability was to "turn the $300,000 payment into a short term capital gain" that could be offset against Duncan's existing short term capital losses. The creation of a capital gain, however, would involve a "sham transaction" that would involve "some papering of transactions, backdating of documents." Crabtree said that he told Butcher the arrangement would be "technically correct" but in reality a sham. Crabtree said Butcher replied that this "wasn't his problem, that it solved his side of the deal, that was the Duncans' problem." Tr. 478.

The "capital asset" ultimately used was a right of first refusal to buy a 40 percent interest in a Knoxville motel. Downing, who had been engaged in negotiations to buy other motel properties from the same seller, Clyde Blalock, persuaded Blalock to convey this "first refusal" to Duncan for nominal consideration. The first refusal

---

**1.** Butcher testified that he discussed the S & L takeover with defendant Joe Duncan, his brother, Jim Duncan, and their father, John J. Duncan.

was then assigned by Duncan to Downing.[2] Both the agreement granting the first refusal and the assignment were dated September 21, 1981, although Blalock testified that he believed the agreement actually had been drawn in October or November. Blalock also testified that on the day the agreement was signed Downing took him to Duncan's office, which was in the same office building as Downing's separate office, and the three discussed and signed the agreement. Blalock said he did not know of the assignment until he was told by federal agents a couple of years later.

Duncan's indebtedness to UAB was discharged in the following manner, with consequences for both the 1981 tax return for which the defendants were acquitted and the 1982 return for which they were convicted. By check dated November 25, 1981, Downing paid Duncan $200,000. The check was drawn on the account of Downing's firm, but apparently was funded by a $200,000 loan from UAB made November 27, 1981. The loan went to Desh Investment Corporation, a separate Downing enterprise with which Butcher and Crabtree also were involved. Duncan endorsed the $200,000 check to UAB to apply to his indebtedness.

In April or May 1982, UAB advanced a second loan to Desh totaling $115,704.28. As the loan application stated, the funds were used to pay off Duncan's loan. At approximately the same time, Downing wrote a check on a Desh account paying UAB $8,817.59 owed in interest on Duncan's loans. Neither loan to Desh ever was repaid; the loans, totaling about $315,000, eventually were written off by another bank that assumed them after UAB failed.

Indictment Counts Two and Four charged that Duncan[3] and Downing had willfully filed and prepared a false return for 1981 which reflected the $200,000 as a short term capital gain rather than as ordi-

nary income. The 1981 return had identified the transaction as "Inv., Howard Johnson," the cost as zero, the gross sales price as $200,000, and therefore the gain as $200,000. Counts Three and Five charged that the 1982 return was false because it reflected (1) $115,704.28 as a short term capital gain rather than as ordinary income, and (2) an interest expense deduction of $8,817.59 to which Duncan was not entitled. The 1982 return had listed a gain of $115,704.28 without any further identification or detail of cost or sale price.

At trial, the Government's case included the testimony of Butcher, Crabtree, Blalock, some employees of Downing, and several bank officials and government agents. A Downing employee, Mark Lund, testified that he had prepared Duncan's 1982 return and that Downing had told him to get the interest figure on Duncan's loans by calling UAB. Neither Downing nor UAB told Lund that Desh, not Duncan, had paid the interest, and Lund did not ask. An IRS expert testified at the close of the Government's case-in-chief that, based on all the evidence presented, the right of first refusal was valueless, the "asset" transaction was a sham, and both the $200,000 payment in 1981 and the $115,000 payoff in 1982 should have been classified as ordinary income. On cross-examination, the Government expert acknowledged that the right of first refusal transaction could have been reported properly as a capital gain "[i]f there had been substance to the transaction, and it was, in fact, a viable option." Tr. 1266.

Neither defendant testified. Both offered expert testimony from law school professors that the Blalock transaction could reasonably have been treated as a capital gain. The defense had presented testimony from William Hitson, an Atlanta investor and founder of Days Inns, that he often traded in rights of first refusal for

2. The assignment granted "all ... right, title and interest" in the right of first refusal in consideration of "$200,000 cash." Other contemporary documents and testimony from Butcher and Crabtree indicated, however, that the parties considered the full consideration would be some $310,000 spread over two years.

3. Count Two also charged that Duncan had willfully omitted $11,600.89 in ordinary income he received from his employer, J.C. Bradford & Co. There was no corresponding charge against Downing on Count Four.

motel properties, that he had negotiated a possible purchase earlier in 1981 of the Knoxville motel in question, and that in his opinion the Blalock document had a value of at least $500,000. Downing's expert also said that Duncan should have reported the $8,800 interest payment as income and then would have been entitled to deduct it.

The Government theory presented to the jury, thus, was that the entire Blalock transaction was a phony scheme concocted to disguise as a capital gain what was really a flat fee paid by Butcher to Duncan, that the scheme was accomplished by back-dating documents from November to September, that both Downing and Duncan were aware of its sham nature, and that any real difference of opinion about how it should have been reported did not exist at the time but was being created by the defense experts after the fact. The defense theory presented was that the right of first refusal was genuine and valuable, that the documents were not back dated, that it was proper to classify the income in both years either as a capital gain or as a forgiveness of debt while the taxpayer was insolvent—which would have resulted in no tax due—and that any errors made were honest and nonwillful mistakes occasioned by Duncan's reliance upon Downing and by Downing's carelessness, ill health, and misplaced reliance upon his own employees. Downing's counsel acknowledged that the interest deduction was a mistake, but called it an honest one.

## II. *The Unanimity Issue*

Duncan and Downing argue that the District Court erred by failing to give an augmented instruction on unanimity when the jury interrupted its deliberations to ask whether it must find a defendant knew that one, or both, of two statements were false. We agree.

### A. *Pretrial Motions, Jury Instructions, and Jury Confusion*

Tracking the statutory language, Counts Three and Five charged that Duncan had filed a return which he "did not believe to be true and correct as to every material matter" and that Downing had advised the preparation of a return which was "false and fraudulent as to a material matter" in that the return represented (1) that Duncan was entitled to report the $115,000 item as a short term capital gain rather than as ordinary income, and (2) that Duncan was entitled to deduct the $8,800 item as interest when he had neither paid the interest nor taken the $8,800 paid by Desh into his own income.

A pretrial motion to dismiss the indictment, joined by both Duncan and Downing, argued that Counts Three and Five were duplicitous because each charged a defendant with more than one offense and created a danger of a nonunanimous verdict.[4]

The motion sought dismissal or reformulation of the counts containing multiple

---

**4.** A duplicitous indictment is one that charges separate offenses in a single count. The overall vice of duplicity is that the jury cannot in a general verdict render its finding on each offense, making it difficult to determine whether a conviction rests on only one of the offenses or on both. Adverse effects on a defendant may include improper notice of the charges against him, prejudice in the shaping of evidentiary rulings, in sentencing, in limiting review on appeal, in exposure to double jeopardy, and of course the danger that a conviction will result from a less than unanimous verdict as to each separate offense. *See United States v. Alsobrook,* 620 F.2d 139, 142 (6th Cir.), *cert. denied,* 449 U.S. 843, 101 S.Ct. 124, 66 L.Ed.2d 51 (1980); 1 C. Wright, *Federal Practice & Procedure: Criminal* 2d § 142 (1982); 2 W. LaFave & J. Israel, *Criminal Procedure* § 19.2(e)(1984).

A multiplicitous indictment charges a single offense in several counts. Its dangers are that the defendant may be given multiple sentences

for what Congress considered a single offense, and that prolix recitation may falsely suggest to a jury that a defendant has committed not one but several crimes. *See* C. Wright, *supra,* § 142 at 475–76 & n. 19.

As rules of pleading, the defects of duplicity and multiplicity are not fatal to an indictment but may be cured by reformulation. In determining whether there is duplicity or multiplicity the decisive criteria are legislative intent and separate proof. When legislative intent is ambiguous, the rule of lenity prescribes that doubt will be resolved against turning a single transaction into multiple offenses, and therefore in favor of combining multiple factual predicates into the same count. *See Bell v. United States,* 349 U.S. 81, 83–84, 75 S.Ct. 620, 622–23, 99 L.Ed. 905 (1955); C. Wright, *supra,* § 142 at 477–78. Courts rejecting duplicity challenges to multiple-predicate counts, however, often premise their rulings on the condition that later augmented jury instructions will adequately protect the de-

specifications on the precise ground that a composite or "patchwork" nonunanimous verdict might result. The motion to dismiss was quite specific about this risk. Relying on *United States v. Alsobrook*, 620 F.2d 139 (6th Cir.), *cert. denied*, 449 U.S. 843, 101 S.Ct. 124, 66 L.Ed.2d 51 (1980), and *United States v. Droms*, 566 F.2d 361, 363 (2d Cir.1977), defendants warned of the danger of conviction by a "divided and less than unanimous jury ... if different members of the jury vote to convict on different violations charged in the count." Noting that "two distinct falsities" were alleged, requiring "entirely different proof as to the two matters alleged," they urged that

> [s]ix jurors, for example, may be convinced only that the interest expense deduction is improper, while the other six may believe only that the short-term capital gain is improper.

Memorandum of Points and Authorities, Docket No. 11A, at 8–9. The District Court denied the motion.

At the conclusion of trial, the District Court charged the jury that as one of the elements for conviction, the Government was required to prove that

> defendant Duncan did not believe that this tax return was true and correct as to every material matter

and that

> defendant Downing knew the income tax return at issue was false or fraudulent as to a material matter.

> The Court ruled as a matter of law that: I have concluded that the statements charged were material statements. Therefore, there is no issue of materiality for you to decide.

Tr. 1953, 1956, 1958. Finally, the Court's charge on unanimity was a standard one:

> In order to return a verdict, it is necessary that each juror agree. The verdict must be unanimous.

Tr. 1970. The verdict form read:

> Question three. We, the jury, unanimously find the Defendant Joe S. Duncan

_____ of the offense
not guilty/guilty

charged in Count 3 of the indictment.

. . . . .

Question five. We, the jury, unanimously find the Defendant Michael M. Downing

_____ of the offense
not guilty/guilty

charged in Count 5 of the indictment.

In the middle of the second day of deliberations, the jury sent a note to the Court indicating confusion about the two alleged false statements and asking for clarification:

> With regard to Counts Two and Three: A question exists relative to the wording of the Counts in the Indictment. In Count Two, two sums are discussed relative to the 1981 tax return. If we agree that one was known and one probably was not when the return was filed, how, if possible, do we apply your instructions to this dilemma? Must both be accepted before a guilty verdict on this Count can be determined? Is the exact wording in the Indictment or the paraphrasing in the Judge's Charge to take precedence?

The District Judge convened counsel, read them the note, and proposed a supplemental instruction that first told the jury that there was no difference between the description of the charges against the defendants in the instructions and the contents of the indictment, but that if the jury perceived any, the indictment would govern. The supplemental instruction told the jury that both alleged false statements were "material matters" and that "if you are convinced ... that Defendant Duncan's return was false with respect to either one of these matters ... then you should convict the Defendant on this count." Tr. 1999–2000.

Duncan's counsel objected to this instruction:

---

fendant against the risk of a nonunanimous verdict. *See, e.g., United States v. Shorter*, 608 F.Supp. 871, 881–82 (D.D.C.1985), *aff'd*, 809 F.2d

54, 56–58 (D.C.Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 71, 98 L.Ed.2d 35 (1987); *United States v. Margiotta*, 646 F.2d 729, 733 (2d Cir.1981).

Mr. Oberman: Your Honor will recall that I believe we raised this question earlier in a motion, and I'm not arguing with the Court's ruling on that motion, but that was the basis for our motion is that it would cause some confusion, and in light of the Court's ruling—

The Court: What would cause confusion?

Mr. Oberman: The fact we have two separate items here in that Count 2 of the indictment. Our position is that they must find both in order to convict Mr. Duncan. That's what the indictment reads.

Tr. 1993. The Court turned its attention to the question of materiality and did not comment on the question of jury confusion or the question of unanimity. This reference by Duncan's counsel to the defendants' joint pretrial motion concerning the possibility of nonunanimity was sufficiently specific to preserve the issue for both defendants, although Downing's counsel did not specifically readdress the unanimity problem at that time but merely continued his objection to the court's comments on materiality.

The proposed instruction was then given without an instruction on unanimity. Three hours later, the jurors reported that "[w]e cannot reach a unanimous verdict." They deliberated for another hour, went home overnight, and after about an hour of deliberation on the third day reported their verdicts. The jury was polled for unanimity on each count, but the District Court denied a post-verdict motion by Downing to be permitted to question the jurors to ascertain the basis of their verdict.

### B. *"Specific" Unanimity Required For Each False Statement*

The general problem raised by these events is the danger of a composite or "patchwork" verdict in violation of the Sixth Amendment principle that a jury verdict be unanimous.[5]

In *United States v. Gipson,* 553 F.2d 453 (5th Cir.1977), the Fifth Circuit held that a federal jury must agree on at least one of multiple alternative "conceptually" distinct acts that would constitute the *actus reus* of the crime. The *Gipson* court also laid down a broad dictum that the jury must "be in substantial agreement as to just what a defendant did." [6] *Id.* at 457.

---

**5.** *See generally* Trubitt, *Patchwork Verdicts, Different-Jurors Verdicts, and American Jury Theory: Whether Verdicts are Invalidated by Juror Disagreement on Issues,* 36 Okla. L. Rev. 473 (1983); Gelowitz, *Jury Unanimity on Questions of Material Fact: When Six and Six Do Not Equal Twelve,* 12 Queen's L.J. 66 (1987); Note, *Jury Agreement and the General Verdict in Criminal Cases,* 19 Land and Water L. Rev. 207 (1984); Note, *Right to Jury Unanimity on Material Fact Issues: United States v. Gipson,* 91 Harv. L. Rev. 499 (1977).

**6.** Subsequent opinions in the Fifth Circuit and elsewhere have refined this broad principle. *See, e.g., State v. Baldwin,* 101 Wis.2d 441, 304 N.W.2d 742, 747 (1981) (immaterial in sexual assault when "force" is element of crime whether force achieved by actual blow or by raised fist). The tying relationship between alternative specifications may be that they merely represent portions of a closely related or continuing course of conduct, *see, e.g., United States v. Schiff,* 801 F.2d 108, 114–15 (2d Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1603, 94 L.Ed. 789 (1987); *United States v. Sutherland,* 656 F.2d 1181, 1202 (5th Cir.1981), *cert. denied,* 455 U.S. 949, 102 S.Ct. 1451, 71 L.Ed.2d 663 (1982); or represent immaterial differences in *mens rea, see, e.g., United States v. McGuire,* 744 F.2d

1197, 1202–03 (6th Cir.1984) (immaterial in violation of 18 U.S.C. § 1005 whether defendant's bank fraud intent was to deceive the statutory alternatives of "any body politic" or "the Controller of the Currency" or "any agent or examiner of such bank"), *cert. denied,* 471 U.S. 1004, 105 S.Ct. 1866, 85 L.Ed.2d 159 (1985); *United States v. Zeidman,* 540 F.2d 314, 317 (7th Cir. 1976) (immaterial whether scheme to defraud debtor or creditor); *People v. Failla,* 64 Cal.2d 560, 51 Cal.Rptr. 103, 414 P.2d 39 (1966) (immaterial which felony a burglar intended to commit upon entry to premises); or represent equivalent criminal roles that carry the same penalty, *see, e.g., State v. Carothers,* 9 Wash.App. 691, 514 P.2d 170 (1973) (felony murder/murder), *aff'd,* 84 Wash.2d 256, 525 P.2d 731 (1974); *United States v. Peterson,* 768 F.2d 64, 67 (2d Cir.) (principal/aider and abettor) (Friendly, J.), *cert. denied,* 474 U.S. 923, 106 S.Ct. 257, 88 L.Ed.2d 264 (1985).

Additional issues of statutory interpretation may arise when the legislature has specified within a statute multiple definitional modes or multiple means of committing essentially the same crime. *See, e.g., United States v. McPherson,* 782 F.2d 66 (6th Cir.1986) (crime under 18 U.S.C. § 656 to "embezzle, abstract, purloin or willfully misapply" bank funds; absence of aug-

Thus, in common law terms, the jury must agree that a defendant did an *actus reus* with a *mens rea*. The question is, when the State alleges alternative acts or intents,[7] each of which would satisfy the *actus reus* or *mens rea* required, must the jury agree on the same *actus reus* or *mens rea*? Sometimes alternative factual specifications are so closely related that a jury need not be unanimous as to which factual predicate or specification supports the defendant's guilt. Often this is a matter of common sense. If the charge is assault and battery, and the evidence is that the defendant hit the victim in the face or on the shoulder, few would insist that the jurors agree on more than the fact of the blow, not on its precise location.

To decide whether these jurors should have been instructed that they must all agree that a particular statement was willfully false, we must examine two issues: (1) Must the jury's verdict actually have been unanimous as to one or the other statement? and (2) If specific unanimity was required, must the jury actually have been told of this requirement? We believe that both these questions must be answered affirmatively—the first because the two alleged false statements themselves constituted the essential culpable acts proscribed by statute and each false statement was a discrete fact requiring separate proof, and the second because the trial judge was required to disclose this augmented unanimity requirement to the jurors as a matter of law when they sought specific information about their need to agree on one or more of the statements.

To resolve the question whether there must have been "specific" unanimity about the alternative false statements, we must look at the statute and at the two false statements alleged. 26 U.S.C. §§ 7206(1) and (2) criminalize the willful filing and preparation of a "return" that is not "true and correct as to every material matter," § 7206(1), and that is "fraudulent or ... false as to any material matter," § 7206(2). Relying in part on its practice of filing one indictment count for each return, *see supra* note 7, the Government argues that the essence of the statute is the filing of the false (or untrue) return. By this reasoning, the jury need be unanimous only on the overall falsity of the return, but not on any particular false statement.

We believe instead that the essence of the statute lies in the willful falsity of a statement. Although § 7206(1) is not invoked unless a taxpayer subscribes to a return "under the penalties of perjury," the criminal conduct sought to be proscribed— the gist of the offense—is the preparation and making of false statements, not the final act of signature and filing. *See United States v. Haynes*, 573 F.2d 236, 240 (5th

---

mented charge not plain error); *United States v. Gipson*, 553 F.2d at 458 (18 U.S.C. § 2313 prohibits "receiving, concealing, storing, bartering, selling, or disposing"; first three and last three terms form two "conceptual groupings" and unanimity is necessary as to each group but not as to each component of a group); *United States v. Frazin*, 780 F.2d 1461, 1468 (9th Cir.) (in mail or wire fraud cases, jurors must be instructed to agree on existence of a "single scheme to defraud," not necessarily "a particular set of facts"), *cert. denied sub nom. Miller v. United States*, 479 U.S. 839, 107 S.Ct. 142, 93 L.Ed.2d 84 (1986).

**7.** A prosecutor's decision to charge what could constitute multiple criminal violations within the same count of an indictment is governed by considerations of legislative intent and of prosecutorial discretion, and by the difficult pleading rules of duplicity and multiplicity. Fed.R.Crim. P. 7(c) permits a prosecutor to allege "in a single count ... that the defendant committed [the offense] by one or more means." The Ad-

visory Committee Note to Rule 7(c) explains that this provision was "intended to eliminate the use of multiple counts for the purpose of alleging the commission of the offense by different means or in different ways." Alleging multiple means or ways in a single count, however, may specify more than one factual predicate that could underlie individual jurors' determinations of a defendant's guilt.

The Tax Division of the Justice Department appears to routinely charge defendants who have made multiple false statements on tax returns for multiple years with one count of violating § 7206(1) for each year, in apparent recognition that the statutory language appears to focus upon the filing of a "return" that is willfully untrue as to each false statement. An indictment that charged a defendant who had made multiple false statements on a single tax return with multiple counts of violating the statute arguably might expose the defendant to greater punishment than Congress intended and therefore be subject to dismissal as a multiplicitous indictment. *See supra* note 4.

Cir.) (willful falsification is the "focal point" of § 7206 cases), *cert. denied,* 439 U.S. 850, 99 S.Ct. 154, 58 L.Ed.2d 153 (1978). The tax return is the federal jurisdictional element. The false statement is the culpable act.[8]

In analogous cases in a great variety of other statutory contexts, alternative factual predicates have been held to require "specific" unanimity. *See, e.g., United States v. Beros,* 833 F.2d 455, 460–62 (3d Cir.1987) (three alternative transactions charged in same count as occasions of "embezzling, stealing, abstracting or converting to own use" union funds: unauthorized use of credit card, excessively expensive hotel room, portion of hotel stay for personal reasons); *United States v. Peterson,* 768 F.2d 64, 67 (2d Cir.) (two discrete instances of drug possession charged in same count: three glassine envelopes found on defendant's brother and glassine envelope stored in nearby wall), *cert. denied,* 474 U.S. 923, 106 S.Ct. 257, 88 L.Ed.2d 264 (1985); *United States v. Payseno,* 782 F.2d 832, 837 (9th Cir.1986) (three charged acts of extortion made to different persons at different times, some in person and some by telephone); *United States v. Margiotta,* 646 F.2d 729, 733 (2d Cir.1981) (in single mail fraud count alleging numerous mailings, jury must agree on "at least one item"), *cert. denied,* 461 U.S. 913, 103 S.Ct. 189, 77 L.Ed.2d 282 (1983).

The discussions by Judge Higginbotham of the Third Circuit and Judge Friendly of the Second Circuit in *Beros* and *Peterson, supra,* are sufficient to illustrate the general point. After describing the embezzlement and purloining count which alleged

"three *separate* transactions of Beros's criminal conduct," Judge Higginbotham follows Judge Wisdom's reasoning in *United States v. Gipson,* 553 F.2d 453 (5th Cir.1977), that in such circumstances the "sixth amendment ... require[s] unanimity regarding the specific act" because "[w]hen the government chooses to prosecute under ... multiple theories" it may not "rely on a composite theory of guilt, producing twelve jurors who were not unanimous in their assessment of which act supported the verdict." 833 F.2d at 461–62 (emphasis original). Likewise, Judge Friendly makes the same point in *Peterson:*

*United States v. Natelli,* 527 F.2d 311, 324–25 (2 Cir.1975), *cert. denied,* 425 U.S. 934, 96 S.Ct. 1663, 48 L.Ed.2d 175 (1976), strongly implies, if it does not actually hold, that the jury must be unanimous as to each "specification" in a count of an indictment, on which it finds the defendant guilty; in that case, *one count of the indictment charged the defendants with making two false representations in a proxy statement,* to wit, an earnings statement and a footnote. A clear holding that the jury must be unanimous with respect to at least one act sufficiently proved was made and explicated in *United States v. Gipson,* 553 F.2d 453, 456–59 (5 Cir.1977) (Wisdom, J.). The court there, however, added the qualification that this principle applies only insofar as the acts on which unanimity is required fall into "distinct conceptual groupings."

768 F.2d at 66–67 (emphasis added).

With a few exceptions, *see, e.g., United States v. Bouquett,* 820 F.2d 165, 169 (6th

---

**8.** If this were a prosecution for tax *evasion* under 26 U.S.C. § 7201, the reasoning would be different. The gist of a tax evasion charge is willful evasion of tax by filing a return that may involve multiple complex understatements or omissions made in a course of continuing conduct. *Cf. United States v. Lennon,* 246 F.2d 24, 27 (2d Cir.1957) (separate acts of understatement of income and fraudulent exemptions named in single count were "different methods by which a single offense may have been effectuated").

Accepting *arguendo* the Government's contention that Congress intended only one term of punishment for each false return in violation of § 7206, *that* conclusion requires only that the

false statements contained in a single return be charged as multiple means in the same count. It does not compel a conclusion that unanimity as to the culpable act can be dispensed with. Rules of pleading that require placing multiple specifications within the same count do not eliminate the need for unanimous determination of those specifications if they are distinct. Indeed, one cure for an otherwise duplicitous indictment is to give an augmented instruction requiring unanimity on one or the other of the acts charged within a count that otherwise appear to constitute separate offenses. *See United States v. Margiotta,* 646 F.2d 729, 733 (2d Cir. 1981), *cert. denied,* 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983).

Cir.1987) (dictum seems to reject *Gipson, Beros, Peterson* rationale but applicable principle unclear), the authorities are relatively uniform on this principle, and the question of judgment in each individual case then becomes one of distinguishing "distinct conceptual groupings" from a single conceptual grouping of related facts. As Judge Friendly noted in the italicized portion of the *Peterson* quote above, a count containing "two false representations" like the representations in the instant case is normally treated as containing two "distinct conceptual groupings." Closest on point are the cases in other statutory contexts requiring specific unanimity for false statements. Title 18, § 1014, for example, in terms criminalizes the making of "any false statement or report." It has been construed to mean that a single document containing multiple false statements must be treated for pleading and sentencing purposes as a single count, *see United States v. Sahley,* 526 F.2d 913, 918 (5th Cir.1976). Yet courts in § 1014 cases have held that augmented specific unanimity instructions are warranted when a single count alleges multiple falsities. *See United States v. Ryan,* 828 F.2d 1010 (3d Cir. 1987); *United States v. Mangieri,* 694 F.2d 1270 (D.C.Cir.1982); *see also United States v. Jessee,* 605 F.2d 430, 431 (9th Cir.1979) (count alleging false oath in bankruptcy alleged nine separate false statements; augmented instruction approved); *United States v. Droms,* 566 F.2d 361 (2d Cir.1977) (noting in dicta that alternative falsifications in count charged under 26 U.S.C. § 7206(1) "required entirely different proof").

 Under these authorities, the jury in this case needed to agree on the willful falsity of one factually distinct false statement because the statements are "conceptually distinct." Although both the interest deduction and the income characterization arose from the same transaction, the circumstances of their formulation and the proof bearing upon their willful falsity were distinct. Downing's willfulness toward the $8,800 interest deduction turned principally on his having signed Desh's check that paid the interest, and on his assignment of the details of preparing the return to his employee. His willfulness on the capital gain turned mainly on his status and skill as a CPA and on his participation in the planning with Crabtree and Butcher. Proof of Duncan's willfulness toward the $8,800 interest payment required an assessment of an unresolved ambiguity in the case of whether he signed the return itself or a later declaration, and thus never saw the return. Deciding his willfulness on the capital gain entailed consideration of his knowledge of tax law, his relationship to Downing, and his actual knowledge of the details of the alleged "sham" transaction. When distinct proof is required to establish distinct affirmative acts as elements of an offense, specific unanimity is necessary. See the good discussion in *State v. Franco,* 96 Wash.2d 816, 639 P.2d 1320, 1328–31 (1982) (Utter, J., dissenting).

We therefore conclude that the offense charged and the facts underlying Counts Three and Five make this case one in which unanimity is required as to any one part of a multipart count of an indictment. The Ninth Circuit, reaching a similar conclusion, has held that unanimity on alternatives is necessary when "discrete acts are alleged in a single count, such as charges of separate false statements, any one of which is sufficient to convict." *United States v. Ferris,* 719 F.2d 1405, 1407 (9th Cir.1983) (Kennedy, J.).

### C. *Necessity for Instruction*

 Our second inquiry is whether, given the necessity for a unanimous verdict, the trial judge was required to instruct the jury of that necessity.

The general rule developed in other circuits is that even when an indictment count provides two or more factual bases ("distinct conceptual groupings," in Judge Wisdom's phrase) upon which a conviction could rest, only a general instruction on unanimity is necessary to advise the jury that they must be unanimous "on whatever specifications form the basis of the guilty verdict," *United States v. Ryan,* 828 F.2d at 1019–20 (quoting *United States v. Payseno,* 782 F.2d 832, 835 (9th Cir.1986)); *see*

*United States v. Murray,* 618 F.2d 892, 898 (2d Cir.1980), unless under the count in question: (1) the nature of the evidence is exceptionally complex or the alternative specifications are contradictory or only marginally related to each other; or (2) there is a variance between indictment and proof at trial; or (3) there is tangible indication of jury confusion, as when the jury has asked questions or the court has given regular or supplementary instructions that create a significant risk of nonunanimity. The touchstone has been the presence of a genuine risk that the jury is confused or that a conviction may occur as the result of different jurors concluding that a defendant committed different acts. *See United States v. Beros,* 833 F.2d 455, 460–62 (3d Cir.1987); *United States v. Ryan,* 828 F.2d at 1019–20; *United States v. Ferris,* 719 F.2d at 1407; *United States v. Echeverry,* 698 F.2d 375, 376–77 (9th Cir.1983), *modified,* 719 F.2d 974, 975 (9th Cir.1983) (en banc) (question from jury indicating confusion); *United States v. Schiff,* 801 F.2d 108, 114–15 (2d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1603, 94 L.Ed.2d 789 (1987).

Judge Higginbotham's discussion in *Beros* states the standard normally followed in such situations by the federal courts:

> Our task is to determine, in light of the allegations made and the statute charged, whether *the potential* for juror confusion existed. We need not, and indeed probably could not in each case, satisfy ourselves that the jury was *in fact* confused. As the Court of Appeals for the Ninth Circuit noted in *United States v. Echeverry,* 698 F.2d 375, *modified,* 719 F.2d 974 (9th Cir.1983) (en banc), "[w]e are not free to hypothesize whether the jury indeed agreed to and was clear on the" transaction or theory by which it found Beros guilty. 698 F.2d at 377. Rather, we adhere to the simpler, and constitutionally more correct rule:
>
> > When it appears ... that there is a genuine possibility of jury confusion or that a conviction may occur as the result of different jurors concluding that the defendant committed different acts, the general unanimity instruction does not suffice.
> >
> > To correct any potential confusion in such a case, the trial judge *must augment the general instruction to ensure the jury understands its duty to unanimously agree to a particular set of facts.*
>
> 719 F.2d at 975 (emphasis supplied); *accord Payseno,* 782 F.2d at 837; *United States v. Mastelotto,* 717 F.2d 1238 (9th Cir.1983).

833 F.2d at 461 (emphasis original).

In the context of this case, the jury's request for clarification manifested just such a tangible risk of jury confusion and of nonunanimity on a necessary element of the offense charged. Presented with this risk, the trial judge unfortunately appears not to have appreciated the thrust of the jurors' problem. Instead, the judge merely restated his ruling on materiality and imparted the ambiguous advice that the jurors should convict "if you are convinced [that the] return was false with respect to either one of these matters." This instruction did not deter the jury from arriving at a composite verdict.

■ It seems obvious that the District Court's error in instruction was not harmless. This was a conscientious jury that had deliberated for parts of two days before it asked its questions, deliberated for several more hours after receiving the answers before pronouncing itself deadlocked, and then took several more hours into the next day before reaching its verdicts. The jury obviously wrestled with its problems and returned with a discriminating verdict that acquitted on some counts and convicted on others. Although we do not look behind the verdict reached, surely there is a heightened risk in such circumstances of a composite, nonunanimous verdict. When there is a reasonable possibility that a jury has relied on an "unconstitutional understanding of the law" in reaching a guilty verdict, that verdict must be set aside. *Francis v. Franklin,* 471 U.S. 307, 322 n. 8, 105 S.Ct. 1965, 1975 n. 8, 85 L.Ed.2d 344 (1985).

A question from a deliberating jury often represents a pivotal moment in a criminal trial. Particularly in a close case like this, a trial judge has a "duty of special care" when responding to a request for "further light on a vital issue" from the foreperson of a confused jury. As Justice Frankfurter said:

> Particularly in a criminal trial, the judge's last word is apt to be the decisive word. If it is a specific ruling on a vital issue and misleading, the error is not cured by a prior unexceptionable and un-illuminating abstract charge.... When a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy.

*Bollenbach v. United States*, 326 U.S. 607, 612–13, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946).

### III. *Good Faith Reliance Upon Tax Accountant*

### A. *Evidentiary Foundation*

In addition, Duncan assigns as error the refusal of the District Judge to give the following instruction:

> Good faith is a complete defense to the charges in the Indictment since good faith on the part of a defendant is inconsistent with the existence of willfulness, which is an essential element of the crime. The burden of proof is not on the defendant, of course, since he has no burden to prove anything. The government must establish beyond a reasonable doubt that the defendant acted willfully as charged in the Indictment.
>
> However, a defendant will not be willfully doing wrong if he relied in good faith on an accountant whom he honestly believed competent, made a full and complete disclosure to his accountant of all material facts of which he had knowledge, and then acted strictly in accordance with the advice given to him by his accountant.
>
> Whether the defendant acted in good faith in relying on an accountant whom he honestly considered competent, and whether he made a full and complete disclosure to his accountant, and whether he acted strictly in accordance with the advice rendered to him by his accountant, are all questions for you to determine.

As evidence of his good faith reliance upon Downing, Duncan pointed to (1) the overall circumstances of the transactions in question and of his relationship to Downing; (2) specific testimony about the preparation of the returns in question; and (3) his own hearsay statements of reliance which were admitted at trial via the testimony of live witnesses.[9]

There was testimony that Downing, a CPA whose firm prepared a modest number of tax returns on a regular basis, was Duncan's regular preparer and indeed had promised to handle Duncan's returns each year for the rest of his life for no charge, apparently in forgiveness of a debt. Moreover, the Government's own theory cast Downing as the initiator of the Blalock transaction and as in possession of all information relevant to it.

Second, one Downing employee, Burke Wallace, described Duncan's tax return preparation as a "bag job" in which the taxpayer would bring in his records in a brown bag and the accountants would have to sort through them. Mark Lund's description of the preparation of the 1982 return was that he obtained all information from Downing. Although neither Downing

---

**9.** Duncan also argues for special leniency on the standard of evidence required when, as here, a taxpayer's tax preparer is a nontestifying codefendant whose testimony cannot be compelled for Fifth Amendment reasons. Due to our disposition of this issue on other grounds, we need not reach this possible constitutional question. We note, however, ancillary principles that the standard of evidence necessary to warrant an instruction cannot include an absolute requirement that the taxpayer must testify, for that would burden the taxpayer's own Fifth Amend- ment right against self-incrimination, or an absolute requirement that the taxpayer must present the evidence rather than rely on evidence present in the prosecution's case, for that would run afoul of the Due Process principle that the Government has the burden of proof to establish willfulness as an element of the crime. *See United States v. Phillips*, 217 F.2d 435, 441 (7th Cir.1955); *United States v. Mitchell*, 495 F.2d 285, 288 (4th Cir.1974) (reliance not absolute defense but may negate willfulness).

employee's testimony tended specifically to establish reliance, each was consistent with this theory.

Finally, Stanley Roy, a CPA who accompanied Duncan to a 1984 audit conference with an IRS agent named Mary Patricia Hitchcox, testified that Duncan told the agent he relied on Downing's expertise both on the specific issue of the right of first refusal and for general tax preparation:

> Q: Did [Ms. Hitchcox] ask him as to whether or not [Duncan] understood that option and all those questions pertaining to an option?
>
> A: Yes. And he said, "Well, Mike Downing handled that. I don't really know too much about it, but he handled it and it paid off some debt that I had at the bank."
>
> . . . . .
>
> Q: Was there anything stated by Mr. Duncan to Agent Hitchcox in your presence as to whether or not he had relied upon anyone else preparing his return?
>
> The Court: Sustain [the objection]. That's a leading question.
>
> Q: What, if anything, was said by Mr. Duncan pertaining to the preparation of the tax return?
>
> A: He said that he had Mike Downing prepare his tax returns and he relied on him.

Tr. 1357, 1393. Ms. Hitchcox had testified earlier but was not called by the Government to rebut this testimony.

At the charge conference, the District Court rejected the proffered instruction on reliance by saying that reliance was a factual determination that counsel could argue to the jury but that the jury would have to decide based on the Court's instruction on the meaning of "willfully." Tr. 1838.

The District Court's general instruction on willfulness was:

> Concerning the term "willfully," an act is done willfully if it is done voluntarily and intentionally in violation of a known legal duty. Conduct is not willful if it results from negligence, however great,

inadvertence or mistake or due to a good faith misunderstanding of the law.

> However, an act is done willfully if done voluntarily and intentionally, and with the specific intent to violate the law, or with the specific intent to fail to do something which the law requires to be done.
>
> The Government will have established the willfulness element of this offense if it has been established beyond a reasonable doubt that Defendant Duncan knew the law prohibited the filing of a materially false or fraudulent tax return and that he intentionally filed such a return.
>
> As with other matters to be established in this case, Defendant Duncan's intent may be shown by either direct or circumstantial evidence.

Tr. 1953–54.

In its written opinion denying Duncan's motion for a new trial, the District Court correctly described the elements of a reliance defense as (1) full disclosure of all pertinent facts, and (2) good faith reliance on the accountant's advice, citing *United States v. Whyte*, 699 F.2d 375 (7th Cir. 1983), and *United States v. Cox*, 348 F.2d 294, 296 (6th Cir.1965). The Court also correctly noted that an instruction should not be given "if it lacks evidentiary support or is based upon mere suspicion or speculation," quoting *United States v. James*, 819 F.2d 674, 675 (6th Cir.1987), and citing a tax case, *United States v. Head*, 697 F.2d 1200, 1212 (4th Cir.1982), *cert. denied*, 462 U.S. 1132, 103 S.Ct. 3113, 77 L.Ed.2d 1367 (1983).

The District Court elaborated that the first element of the reliance defense was not satisfied because there was no evidence that Duncan had made any disclosure to Downing; to the contrary, "Downing provided as much information for the return as did Duncan." The Government essentially concedes on appeal, and we agree, that the District Court was incorrect on this point. It would be pointless, in the circumstances of this case, to insist on proof that the taxpayer disclosed all relevant facts to the preparer when the evidence was that the preparer possessed all

the relevant facts from the outset, as the initiator of the underlying transaction, and there was thus no information for the taxpayer to disclose.

The District Court held that the second element was not satisfied because there was "no evidence" to that effect. The District Court noted that Duncan "himself did not take the witness stand" and discounted Roy's testimony because it was made at the audit of Duncan's 1981 return, not of his 1982 return. The Court characterized Duncan's statement, as reported by Roy, as "to say the least, somewhat ambiguous, and would not even approach establishing facts necessary to establish a reliance defense, even if it were directed at the 1982 return."

The District Court said that the defendants had offered "next to nothing in the way of evidence regarding their putative 'theories'" and were trying to have it "both ways." The Court said there was

> no evidence of defendant Duncan's *good faith* in relying upon what Downing put in the 1982 return. Duncan surely knew, for example, that he never paid $8,817.59 in interest to the United American Bank, Knoxville, and yet the return shows such a payment. In these times when many of us have accountants or others prepare our tax returns, the law cannot permit us to merely close our eyes and blame the accountant for the information which appears on the returns, especially without any evidence that we acted innocently.

Memorandum and Order of June 26, 1987 at 4, App. 67 (emphasis original).

### B. *Entitlement to Instruction*

While we sympathize with the District Court's general views on the desirability of individual accountability and do not quarrel with its recitation of the law on this subject, we nevertheless conclude that on the facts of this case its refusal to give a reliance instruction usurped the function of the jury by depriving Duncan of his opportunity to present his theory of defense.

Notwithstanding the cases cited by the District Court, it is the law in this Circuit and elsewhere, as Judge Weick explained for a panel of Judges Miller, Engel and Weick, that "when a theory of defense finds some support in the evidence and in the law, a defendant is entitled to some mention of that theory in the instructions." *United States v. Garner*, 529 F.2d 962, 971 (6th Cir.), *cert. denied sub nom. Brown v. United States*, 426 U.S. 922, 96 S.Ct. 2630, 49 L.Ed.2d 376 (1976). It is true that, as Judge Bazelon once observed, any attempt to formulate a precise quantitative measure of the amount of evidence necessary to raise an issue to the level requiring an instruction "can produce no more than an illusory definiteness." *Tatum v. United States*, 190 F.2d 612, 615 (D.C.Cir.1951), *cited by Garner*, 529 F.2d at 970. Certainly the test cannot be one of reasonableness. It is not for the judge, but rather for the jury, to "appraise the reasonableness or the unreasonableness of the evidence" relative to the reliance theory. *United States v. Phillips*, 217 F.2d 435, 442 (7th Cir.1954); *United States v. Platt*, 435 F.2d 789, 792 (2d Cir.1970) (reasonableness of reliance is jury question). To hold otherwise would be tantamount to a grant of partial summary judgment to the Government in a criminal case.

■ A claimed defense of good faith reliance upon a tax preparer or tax counsel is a critical circumstance that may be dispositive of the central issue of willfulness. *Id.* Particularly on an issue of such importance, we believe that the standard will be satisfied if there is "any foundation in the evidence" sufficient to bring the issue into the case, even if that evidence is "weak, insufficient, inconsistent, or of doubtful credibility." *Id.* at 443; *see Tatum*, 190 F.2d at 616; *Garner*, 529 F.2d at 970.

■ The District Court believed that its general instruction on willfulness was sufficient and that Duncan's counsel could provide the jury facts to fit within its general statement of the law by arguing that there could be "no intentional violation of a known legal duty in that [reliance] situation." Tr. 1838. This approach was insufficient. When a proper request for an instruction on a criminal defendant's theory of defense is made, it is reversible error not

to present that theory adequately in a full statement of the law. *See Bird v. United States,* 180 U.S. 356, 361, 21 S.Ct. 403, 405, 45 L.Ed. 570 (1901); *United States v. Blane,* 375 F.2d 249, 252 (6th Cir.), *cert. denied,* 389 U.S. 835, 88 S.Ct. 41, 19 L.Ed. 2d 96 (1967).

Moreover, when the general charge on an issue appears to exclude the specific defense theory being argued by counsel, as it did here, that argument, unsupported by an instruction to which the defendant is entitled, may be more harmful than helpful. In *Phillips,* 217 F.2d at 440–41, although there was no contention and no proof that the defendant failed to report gross income through either negligence or carelessness, the lower court had refused to instruct on what effect the jury should give to proof that the omission was due to reliance upon advice of his lawyer, but gave the following instruction:

> Nor would mere negligence or carelessness, unaccompanied by bad faith, render the defendant guilty.

Reversing the conviction, the Seventh Circuit noted that counsel's reliance argument to the jury, unsupported by an appropriate instruction, constituted "an aggravation rather than a mitigation of the harmful effect of the Court's refusal to instruct." *Id.* at 440.

█ The same is true here. The District Court's general willfulness instruction enumerated for the jury three specific instances in which conduct would not be willful: "if it results from [1] negligence, however great, [2] inadvertence or mistake or [3] due to a good faith misunderstanding of the law." Tr. 1954. Only the interest deduction could fit into these categories as due to "inadvertence or mistake." There was no claim that Duncan's actions on the interest item were due to either negligence or misunderstanding of the law, and no claim that his actions on the capital gain fell into any of the three categories listed. Even if the jury accepted as factually established the reliance arguments made by Duncan's counsel, it could not match those arguments against any of the trial judge's categories of exception. The boilerplate

instruction on willfulness given by the District Court thus could not have been cured by argument of counsel. To the contrary, the jury might well have concluded that counsel's hollow argument on reliance was contrary to, and precluded by, the judge's statement of the law.

We do not mean to say that the District Court was required to give the instruction offered by Duncan. As this Court said in *Garner,* a defendant is entitled to "some mention" of his theory of defense, not necessarily to the exact language he has suggested. 529 F.2d at 970. In the present case, it would have been well within the discretion of the District Court, and appropriate, to modify the suggested instruction by (1) tailoring the first prong of the reliance defense to reflect the factual circumstances discussed above and (2) combining the reliance instruction with an instruction on the adverse effect "willful blindness" must have on a good faith defense to criminal intent. *See, e.g., Williamson v. United States,* 207 U.S. 425, 453, 28 S.Ct. 163, 52 L.Ed. 278 (1908); *United States v. Lawson,* 780 F.2d 535, 542 (6th Cir.1985); *United States v. Schiff,* 801 F.2d 108, 112–13 (2d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1603, 94 L.Ed.2d 789 (1987).

Nor are we saying that a reliance instruction, with or without a "willful blindness" instruction, must be given whenever a defendant asserts that he followed a preparer's advice in good faith, if there is overwhelming evidence to the contrary. *Cf. United States v. Schmitz,* 542 F.2d 782, 785 (9th Cir.1976) (defendant admitted familiarity with statutes and thoughtful pursuit of course of action resulting in prosecution), *cert. denied,* 429 U.S. 1105, 97 S.Ct. 1134, 51 L.Ed.2d 556 (1977); *United States v. Hoopes,* 545 F.2d 721, 721 (10th Cir.1976) (defendant decided after years of study and protest of internal revenue laws to undertake course of action), *cert. denied,* 431 U.S. 954, 97 S.Ct. 2675, 53 L.Ed. 2d 270 (1977).

What we hold is this: some evidence brought the good faith reliance issue into this case, *Tatum,* 190 F.2d at 616, and other evidence did not negate it. Under

those circumstances, the defendant is entitled to an instruction that tells the jury about a central theory of his defense.

Defendants' remaining contentions on appeal have been considered and are without merit. The judgments of conviction in the District Court are vacated for the reasons stated and the cases remanded for new trial on Counts Three and Five consistent with this opinion.

KENNEDY, Circuit Judge, concurring in part and dissenting in part.

I concur in Part III of the Court's opinion and in parts A and B of Part II. I disagree with the majority's holding that either the District Court should have been alerted to the item unanimity issue or that it was plain error not to instruct the jury that it should be unanimous as to the particular items in the return prepared by Downing which were false and fraudulent and which Duncan did not believe to be true and correct.

The majority concludes that because the defendants had, in a pretrial motion, raised the claim that Counts III and V were duplicitous and, in support of that claim, had argued in Duncan's brief that the jurors might convict even though the jurors were not unanimous in finding the returns were false in the same respects, that the court should have been alerted to the problem. The record reflects that the motion and brief were filed on July 28, 1986. The trial began in May 1987. The motion was one of 23 pretrial motions assigned to the magistrate. The brief was never submitted to the District Court. In defendants' 22 pages of objections to the magistrate's Report and Recommendation on pretrial motions, defendants only mentioned this issue in one sentence. A vague reference at trial to a memorandum filed a year earlier before a different judicial officer cannot be expected to alert anyone to anything.

While I agree that jurors' questions should alert the trial judge to possible problems, here the jurors' question, rather than suggesting a lack of unanimity as to

items, indicates that the jurors were unanimous on one of the items.

In Count Two, two sums are discussed relative to the 1981 tax return. If we agree that one was known and one probably was not when the return was filed, how, if possible, do we apply your instructions to this dilemma? Must both be accepted before a guilty verdict on this Count can be determined? Is the exact wording in the Indictment or the paraphrasing in the Judge's Charge to take precedence?[1]

The colloquy between the court and counsel indicates their attention was focused on whether the government had to prove the return was false in both respects. It is interesting that the issue of unanimity as to the falsity of a specific item was not even raised by appellants until Downing's reply brief.

The jury was polled and each responded that the verdicts were their individual verdicts. The trial judge instructed the jury that their verdict must be unanimous. This I believe was sufficient. Accordingly, I would affirm Downing's conviction.

---

1. Count Two had charged that Duncan knew and believed $11,600 in salary *and* $200,000 in

short-term capital gain should have been reported as income.