881 F.2d 1077
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee
v
Joe S. DUNCAN and Michael M. Downing, Defendants-Appellants
 Nos. 88-6365, 88-6366.
 United States Court of Appeals, Sixth Circuit.
 Aug. 7, 1989.
 
 Before MERRITT and KENNEDY, Circuit Judges; and NICHOLAS J. WALINSKI, Senior District Judge*
 MERRITT, Circuit Judge.
 
 
 1
 Defendants Duncan and Downing appeal on double jeopardy grounds an order of the District Court denying their motion to dismiss criminal tax charges for making false statements on their tax returns. Specifically, defendants contend that a retrial and conviction on Counts 3 and 5 of their indictment would be inconsistent with their previous acquittal on Counts 1, 2 and 4 of the indictment and would, therefore, violate the Double Jeopardy Clause. We disagree, and shall affirm the order of the District Court.
 
 
 2
 The relevant facts are presented in detail in this Court's decision reversing Downing's and Duncan's convictions at the first trial. For a full understanding of the case, one must read our lengthy opinion in United States v. Duncan, 850 F.2d 1104 (6th Cir.1988). The facts are briefly summarized as follows:
 
 
 3
 The indictment charged [C.H.] Butcher, Duncan, and Downing with conspiring to defraud the United States by impeding the ascertainment and collection of income taxes in violation of 18 U.S.C. Sec. 371 (Count One); charged Duncan with violating 26 U.S.C. Sec. 7206(1) by making false returns for the years 1981 (Count Two) and 1982 (Count Three); and charged Downing with violating 26 U.S.C. Sec. 7206(2) by aiding in the preparation of false returns for the years 1981 (Count Four) and 1982 (Count Five)....
 
 
 4
 [T]he Government's theory, described a scheme whereby Butcher sought to gain control of the Knox Federal Savings & Loan, a mutual S & L over which Duncan's family exercised partial control. In return for the assistance of the Duncans ... Butcher agreed to undertake separate financial transactions favorable to ... [the] family.... Defendant Duncan ... had about $310,000 in indebtedness to the United American Bank (UAB) of Knoxville, which Butcher's family controlled.... Butcher testified that to enlist the Duncan's support, he and Crabtree, [Butcher's close associate,] with Downing as a middleman, devised an arrangement to write off defendant Duncan's debt.
 
 
 5
 850 F.2d at 1106 (footnotes omitted). This arrangement was structured in the following manner:
 
 
 6
 Downing persuaded the owner of a Knoxville motel to convey, for nominal consideration, the right of first refusal to buy an interest in a Memphis motel to Duncan. Duncan then assigned the right to Downing for a stated consideration of $200,000.[2] The documents used to convey these interests were allegedly backdated.
 
 
 7
 Downing paid Duncan $200,000 in 1981. The $200,000 came from a loan which Butcher's bank made to Desh, a dummy corporation controlled by Downing. Duncan used this money to apply to his indebtedness at Butcher's bank and claimed a short term capital gain of the $200,000 on his 1981 tax return.
 
 
 8
 Butcher's bank later made a second loan to Desh of $115,704.28. This money was used to pay off the remainder of Duncan's indebtedness to Butcher's bank. Duncan claimed this sum as a short term capital gain on his 1982 return. Duncan also claimed $8,817.59 paid on his behalf by Desh as an interest expense deduction.
 
 
 9
 Neither loan to Desh was ever repaid. The loans, totaling about $315,000 were eventually written off by a bank that assumed them after Butcher's bank failed.
 
 
 10
 Duncan, Downing and Butcher were indicted as described above. Butcher pled guilty and testified for the government. The jury acquitted Duncan and Downing on Counts 1, 2 and 4 and convicted on Counts 3 and 5, involving the 1982 tax year.
 
 
 11
 On appeal, this Court, reversed the convictions on Counts 3 and 5. See Duncan, 850 F.2d 1104. The Court held that the District Court should have given the jury an augmented instruction that the jurors must agree on the willful falsity of at least one, and the same one, false statement. This Court, therefore, vacated the convictions and remanded the cases for a new trial on Counts 3 and 5.
 
 
 12
 On remand before the District Court, Duncan and Downing contended that a second trial on Counts 3 and 5 was barred on double jeopardy grounds. Specifically, Duncan and Downing argued that because the government treated the $315,000 debt discharge transaction as a single scheme for purposes of the conspiracy count and the jury acquitted them on the conspiracy count and the counts involving the 1981 tax return, the government is collaterally estopped from retrying them on Counts 3 and 5--the substantive charges arising from the 1982 return.
 
 
 13
 The District Court rejected this argument. The Court relying on Sealfon v. United States, 332 U.S. 575 (1948), held that in order to prevail on double jeopardy based on their conspiracy acquittal, defendants must show that the jury decided for the defendants an ultimate fact which constitutes an element of the substantive offense for which they are now on trial. The defendants cannot meet that requirement here, the District Court continued, because the conspiracy acquittal may have been based on the fact that there was no agreement.
 
 
 14
 Nor, the court continued, does defendants' acquittal on the fraud charges arising from the 1981 tax return bar reprosecution on the charges arising from the 1982 return. The court rejected defendants' theory that the acquittal was based on the jury's finding that the declaration of short-term capital gain on the 1981 return was not false and fraudulent. Instead, the court concluded, the acquittal could be based on Duncan's defense theory that he had not signed a 1981 return meaning there was no statement filed at all, let alone a false one. Moreover, the court said, the evidence concerning the $200,000 option on the 1981 return was "qualitatively" different from that concerning the $115,000 and $8,000 entries on the 1982 return. Thus, the jury could have believed that the 1981 entry was genuine and the 1982 entries not.
 
 
 15
 In addition, the Court referred to its 1987 decisions holding that the jury's verdicts of conviction of Counts 3 and 5 were both factually and legally supportable despite its verdict of acquittal on the remaining counts. Defendants' double jeopardy argument, the Court concluded, is merely a rehash of this earlier "inconsistent verdict" argument.
 
 
 16
 Finally, the Court relying on Richardson v. United States, 468 U.S. 317 (1984), ruled its order immediately appealable under 28 U.S.C. Sec. 1291.
 
 
 17
 The doctrine of collateral estoppel as it relates to double jeopardy provides that once an issue of ultimate fact has been determined, that issue cannot again be litigated. Ashe v. Swenson, 397 U.S. 436, 443 (1970). In criminal cases, the rule of collateral estoppel should not be applied with "the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality.... The inquiry 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.' " Id. at 444, quoting Sealfon v. United States, 332 U.S. 575, 579 (1984). The burden on defendants is to show that the verdict necessarily decided the issues that they claim the Government is attempting to relitigate. See United States v. Benton, 852 F.2d 14356 (6th Cir.), cert. denied, 109 S.Ct. 555 (1986), and United States v. Johnson, 697 F.2d 735, 741 (6th Cir.1983).
 
 
 18
 Defendants argue that the court below erred by engaging in an "unrealistic and hypertechnical analysis" of the possible basis for the jury's verdict. They argue that the acquittal on the conspiracy charge was a determination that the 1981 and the 1982 tax returns did not contain any false statements. They similarly assert that their acquittal on Counts 2 and 4, relating to the 1981 tax returns, was a determination that there were no false statements in the 1982 returns. These assertions are based on defendants' characterization of the Government's theory as alleging wrongdoing as a part of a single scheme or transaction.
 
 
 19
 Defendants' position is overstated. Giving a reasonable interpretation to the jury's verdicts, defendants' conviction on the basis of the 1982 return would not necessarily be inconsistent with their acquittal on the conspiracy and 1981 charges for several reasons.
 
 
 20
 First, there is no inconsistency between the conspiracy acquittal and a conviction based on the 1982 return. The jury could have decided that there was no "agreement" between Butcher, Duncan and Downing. Or the jury could have decided that even though there was an agreement to engage in the sham transaction, there was no agreement to commit the particular substantive offense--the making of a fraudulent statement on the 1982 tax return. They could have believed the value of the right of first refusal was not more than $200,000 or that the agreement was for no more than this amount. It is apparent, therefore, that the acquittal did not necessarily determine that the 1982 tax return did not contain false and fraudulent statements.
 
 
 21
 Second, there is no inconsistency between the acquittal based on the 1981 return and a conviction based on the 1982 return. Although it seems unlikely, the jury could have accepted the defense theory that the document on which the Government's 1981 return false statement case was based was not Duncan's 1981 tax return.
 
 
 22
 Moreover, the jury could have found that the right of first refusal was worth only $200,000, as stated on the face of the September 21, 1981 document assigning the right from Duncan to Downing. See Government Exhibit 5. Relying on such a finding a jury could conclude that the 1981 statement was honest, or at least not so dishonest as to make defendants criminally liable, but that the 1982 statement seeking to assign an additional value of $115,000 to the right was fraudulent.[3]
 
 
 23
 Much of the evidence consisted of expert opinion as to the value of the right of first refusal and live testimony as to oral rather than written agreements between the parties. Given the contentious and uncertain nature of such evidence, we cannot say that this case should be withdrawn from the jury on the grounds that acquittal on Counts 1, 2 and 4 bar retrial on Counts 3 and 5.
 
 
 24
 The decision of the District Court is affirmed.
 
 
 
 *
 The Honorable Nicholas J. Walinski, Senior Judge of the United States District Court for the Northern District of Ohio, sitting by designation
 
 
 [2]
 There are other contemporaneous documents which indicate that the consideration contemplated by the parties was $310,000. Defendants contend that the consideration was $310,000 and that the sum was paid in installments in 1981 and 1982 and so reported on Duncan's tax return
 
 
 [3]
 Defendants point to our earlier opinion, 850 F.2d at 1107 n. 2 as finding that the full consideration for the right of first refusal was $310,000. This is also an overstatement. We merely stated that there were documents which support the contention that the full consideration for the right was $310,000. We did not, however, hold that the jury so found nor that the case should be withdrawn from the jury on this ground