**UNITED STATES of America,**
**Appellee,**

v.

**Acy LENNON, Defendant-Appellant.**

**Nos. 255–256, Dockets 24411–24412.**

United States Court of Appeals
Second Circuit.

Argued March 7, 1957.

Decided June 12, 1957.

Leonard Feldman, New York City, for defendant-appellant.

Paul W. Williams, U. S. Atty., S. D. N. Y., New York City (Thomas A. Bolan, Asst. U. S. Atty., New York City, of counsel), for appellee.

Before MEDINA and WATERMAN, Circuit Judges, and GALSTON, District Judge.

WATERMAN, Circuit Judge.

The defendant, Acy Lennon, appeals from a judgment of conviction on four counts of a six count indictment. He was charged with willfully attempting to evade income taxes by filing false returns for the calendar years 1949 to 1954 in violation of 26 U.S.C.A. § 145(b), Int. Rev.Code of 1939.[1] In each of the four counts on which the jury returned a verdict of guilty, covering the years 1949 to 1952, the defendant was charged with knowingly understating his net income and with claiming two exemptions to which he knew he was not entitled.

At the trial evidence was adduced tending to establish the following facts: The defendant, during the years here in question, was employed as a Congressional secretary by Congressman Adam Clayton Powell, Jr., of New York City. During this period he also received income as a recreational director for the Abyssinian Baptist Church, of which Dr. Powell was and is the minister. In addition, the defendant owned and operated a candy and stationery store, but he reported a loss from that enterprise during each of the four years here in issue.

On his income tax returns for the years 1949 to 1952 Lennon reported his income from the House of Representatives and from the Abyssinian Baptist Church. In addition, for the year 1949 he reported income of $280 from the "Citizens Comm." and $367.71 from "telephone & commissions"; in 1950 he reported $132 from "concessions telephone" and $160 as a "rebate from ice cream." No other income was reported by appellant for the years 1949 to 1951. For the year 1952 he reported additional income of $1280 from "Commissions, Publications, etc." apparently derived from a tax service operated by the defendant in that year.

After offering the defendant's tax returns in evidence, the Government called as a witness one Joseph E. Ford, who testified that he formerly had operated an income tax service and that he had employed the defendant as a bookkeeper and interviewer from 1941 to 1951. He further testified that he had paid the following sums to the appellant for his services during the years here in issue: $1600 in 1949, $1700 in 1950, and $1600 in 1951.

---

1. The pertinent provision of 26 U.S.C.A. § 145(b) reads as follows:
"* * * any person who willfully attempts in any manner to evade or defeat any tax imposed by this chapter or the payment thereof, shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than five years, or both, together with the costs of prosecution."

The Government also introduced the testimony of one David Kent to the effect that in 1952 he had given the defendant a check for $3000 payable to the Tenants Protective Association, allegedly a non-profit organization formed to assist residents of the Harlem area of New York City in obtaining low rent housing. This payment was allegedly for commissions earned by that organization for the sale of apartments in the Dorie Miller interracial housing project. Congressman Powell was the president of this organization, and the defendant was connected with it as either an officer or an employee. The Government attempted to prove that the defendant ultimately received all or part of the $3000 as personal income. At the close of the Government's case, however, the trial judge ordered the lengthy testimony introduced in support of this contention to be stricken from the record because the Government had failed to establish that the defendant had ever pocketed any part of the controversial $3000.00.

On his returns for the years 1949 to 1952, the defendant had claimed six exemptions, including two dependent sons named "Acy, Jr." and "William." The spaces provided for the addresses of these two dependents, in the event their addresses differed from that of the defendant, were left blank.

The Government called as one of its witnesses Vivian Della Lennon, a daughter of the defendant, who at the time of the trial in 1956 was 22 years of age. Miss Lennon testified that she had always lived with her parents and that she had no knowledge of having any brothers, except for vague "rumors" that her father had sired two illegitimate sons. Witness Ford, who claimed that he had seen the defendant almost daily while Lennon was allegedly in his employ, tes-

tified that the defendant had never mentioned the existence of any sons; and that he, Ford, although he knew Mrs. Lennon and had visited the Lennon home, had not seen or heard of any sons of the defendant.

The jury returned a verdict of guilty on the first four counts, covering the years 1949 to 1952. A verdict of not guilty was brought in on the fifth count, which covered the year 1953, and the jury disagreed on the sixth count, applicable to 1954.

On appeal the defendant urges a number of grounds for reversal, most of which are totally devoid of merit. Several warrant extended discussion, but we find no error in the proceedings below justifying a reversal. We therefore affirm the judgment of conviction.

## I

The appellant first argues that the Government neither charged nor proved acts sufficient to constitute a violation of 26 U.S.C.A. § 145(b). It is his contention that the filing of a false and fraudulent return, without more, cannot be the basis of a felony conviction under section 145(b), but, at most, constitutes a misdemeanor under 26 U.S. C.A. § 3616(a), Int.Rev.Code of 1939.[2] This argument has already been considered and rejected by this Court, see United States v. Moran, 2 Cir., 1956, 236 F.2d 361, certiorari denied 352 U.S. 909, 77 S.Ct. 148, 1 L.Ed.2d 118; United States v. Costello, 2 Cir., 1956, 239 F.2d 177, certiorari granted 1957, 352 U.S. 988, 77 S.Ct. 388, 1 L.Ed.2d 367, and the Supreme Court has recently held that section 3616(a) does not apply to the evasion of the income tax. Achilli v. United States, 77 S.Ct. 995. Hence the appellant's position is untenable.[3]

---

2. The pertinent provision of 26 U.S.C.A. § 3616(a) reads as follows:
    "Whenever any person—
    "(a) * * * Delivers or discloses to the collector or deputy any false or fraudulent list, return, account, or statement, with intent to defeat or evade the valuation, enumeration, or assessment intended to be made; * * *

* * * he shall be fined not exceeding $1,000, or be imprisoned not exceeding one year, or both, at the discretion of the court, with costs of prosecution."

3. The appellant attempts to rely on Spies v. United States, 1943, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418, but there the Supreme Court held only that the *failure to*

## II

■ The defendant also contends that it was prejudicial error for the trial court to submit to the jury, as single counts for each year in question, the combined issues of understatement of income and of fraudulent exemptions. It is argued that these two issues involve entirely unrelated matters, and therefore they should have been separated for individual ascertainment of guilt or innocence by the jury. But, in so asserting, the appellant misconceives the offenses for which he was being tried. The felonious act in issue for each year named in the indictment was the willful filing of a false and fraudulent income tax return. A single return, of course, could be falsified in an unlimited number of particulars. The filing of such a return, however, constitutes but a single act within the meaning of section 145(b). Hence the indictment was not "duplicitous," because each count charged only one criminal violation. See 11 Cyc.Fed.Proc. § 42.109 (1952).[4] The issues of understatement of income and of fraudulent exemptions were set forth in each count only as different methods by which a single offense may have been effectuated. The jury properly could have based its determination of guilt on a finding that in any given tax year the defendant knowingly understated his income, or that he knowingly claimed false exemptions, or that he did both, in an attempt to avoid taxation. Therefore the trial court correctly refused the defendant's request to separate these issues for submission to the jury.

## III

■ The appellant next urges several fatal defects in the Government's case as grounds for reversal. He contends that, although the Government may have introduced testimony tending to prove that the defendant was not supporting two sons who resided in his home, it did not negative, by competent evidence, the possibility that the defendant was actually entitled to a total of six exemptions, as claimed in his returns for the years 1949 to 1952. The defendant's theory is that a "mere misdescription" of permissible exemptions is no evidence of an attempt to evade taxation.

We find this argument unpersuasive. The Government, once having shown the non-existence of the particular dependents claimed by the defendant, "is aided by the presumption that the deductions and exclusions listed by a taxpayer in his return are all that exist. This presumption is based upon reasonable experience (taxpayers would not knowingly fail to report all valid deductions), and has the effect of shifting the burden of going forward with the evidence to the defendant, when the Government has shown unreported income." United States v. Bender, 7 Cir., 1955, 218 F.2d 869, 871–872, certiorari denied 349 U.S. 920, 75 S.Ct. 660, 99 L.Ed. 1253. See also United States v. Link, 3 Cir., 1953, 202 F.2d 592, 593–594. Cf. Clark v. United States, 8 Cir., 1954, 211 F.2d 100, 103. The defendant was unable to show at the trial that he was entitled to any exemptions not listed in his returns, and therefore the court properly submitted to the jury the question of whether the defendant

*file* an income tax return and to pay income taxes, without more, could not constitute a felony under 26 U.S.C.A. § 145 (b), Int.Rev.Code of 1939. Here the appellant was charged with knowingly and willfully filing false and fraudulent returns in an attempt to evade income taxes.

4. "Duplicity in an indictment means the charging of two or more separate and distinct offenses in one count, not the charging of a single offense into which several related acts enter as ways and means of accomplishing the purpose." Frankfort Distilleries, Inc., v. United States, 10 Cir., 1944, 144 F.2d 824, 832, reversed on other grounds, 324 U.S. 293, 65 S.Ct. 661, 89 L.Ed. 564. See also Empire Oil & Gas Corp. v. United States, 9 Cir., 1943, 136 F.2d 868, 872; United States v. Crummer, 10 Cir., 1954, 151 F. 2d 958, 963, certiorari denied 327 U.S. 785, 66 S.Ct. 704, 90 L.Ed. 1012.

had knowingly claimed false dependents in an attempt to evade taxation.

Nor was it necessary for the Government to introduce independent evidence, apart from the defendant's tax returns, to show that the defendant had not reported his alleged income from Ford's tax service. The returns spoke for themselves. The only major sources of income listed by the defendant for the years 1949 to 1951, when he was allegedly employed by Ford, were the House of Representatives and the Abyssinian Baptist Church. Congressman Powell, the pastor of the latter, testified that Ford's tax service was not conducted under the aegis of his church.

The defendant makes an unconvincing effort to show that the income from Ford, if any, was included in the substantial gross revenues of his stationery and candy store, which annually reported a net loss during the period here in question. This claim is not plausible, however, because there appears to be no relationship in fact between the two enterprises. Thus the Government made out a sufficient case to submit to the jury the questions of whether the defendant received income from Ford, and whether he intentionally failed to report that income in an attempt to avoid taxation.

### IV

■ Evidence of both tax evasion and willfulness was ample. On appeal the defendant strenuously attacks the credibility of Ford, upon whose testimony, along with several canceled checks made out to the defendant, the Government principally relied to prove that Lennon received unreported income from Ford's tax service. Our attention has been directed to inconsistencies in Ford's testimony and to the possible motives this witness might have had for testifying falsely. But, as we have repeatedly held, the credibility of witnesses is a matter to be resolved by the jury, not an issue to be contested on appeal. See, e. g., United States v. Compagna, 2 Cir., 1944, 146 F.2d 524, 526 (per L. Hand, J.).

Apart from the evidence of unreported income, the jury could have reasonably inferred the necessary element of willfulness from the defendant's claim of two non-existent dependents throughout the four years here in question. Such assertions, particularly by one who was familiar with income tax forms, could hardly be dismissed as merely an act of ignorance or mistake. To the contrary, it would seem an almost inescapable inference that these false claims were asserted solely as an attempt to evade taxation.

### V

■ Far more substantial is the appellant's assertion of prejudice. He contends that the Government's attempts to link him with improprieties allegedly committed by Congressman Powell and others in respect to the Dorie Miller housing project created a prejudical atmosphere and deprived him of a fair trial. As a particularly glaring example of the alleged effort of the Government to transform this trial for tax evasion into an arena for political exposés, the appellant cites the following question put by the prosecutor to Congressman Powell when that witness for the Government first took the stand:

"Now, Mr. Powell, has any pressure, in any manner, shape, or form, directly or indirectly, been put on you by the White House or anybody in the United States Government in connection with this case?"

The appellant also points out that approximately two-thirds of all the testimony offered by the Government concerned the Dorie Miller interracial housing project and the alleged payment of $3000 by David Kent to the Tenants' Protective Association. This testimony subsequently was ordered stricken from the record by the trial judge on the ground that there was no evidence to show that the defendant had personally retained or ultimately received any part of the $3000.00.

It is the appellant's position that the striking of such evidence and the subse-

quent admonition to the jury by the court to disregard that evidence were insufficient to dispel the prejudice created during several days of lengthy testimony by a number of Government witnesses. There is much merit to this contention. Cf. Krulewitch v. United States, 1949, 336 U.S. 440, 453, 69 S.Ct. 716, 93 L.Ed. 790 (concurring opinion of Mr. Justice Jackson); People v. Robinson, 1937, 273 N.Y. 438, 445–446, 8 N.E.2d 25.

Nevertheless, despite our abhorrence of any effort by either party to insinuate politics into a criminal prosecution, we do not believe that this appellant is entitled to a new trial on the facts and circumstances of this case.

Our reasons for so believing are several: (1) Putting any personal skepticism aside, we are not prepared to label as disingenuous the Government's initial line of proof concerning the Dorie Miller project. Apparently at the outset of the trial the prosecution believed it could prove that the defendant personally pocketed all or some of the $3000 allegedly paid to the Tenants Protective Association by David Kent. (2) At the very first attempt by the Government to introduce testimony relating to this facet of the case, the trial court ruled that such evidence would only be admitted "subject to connection." Counsel for the defense did not appear to contest this ruling, as his primary concern at the trial seemed to be with the relevance, not the possible prejudice, of this evidence. (3) Significantly, at no time during the trial did the defendant move for a mistrial on the ground of prejudice. (4) The trial court immediately sustained the defendant's objection to the question, quoted above, that was asked of Congressman Powell by the Government Attorney. Despite the defense counsel's apparent disturbance at such a line of inquiry, he himself interrogated Dr. Powell at some length as to whether anyone from the Government, other than the United States Attorneys, had spoken to the witness relative to his testifying in this trial. (5) At the end of the Govern-

ment's case, since the prosecution had not shown that the defendant had personally profited from Kent's payment to the Association, the trial court dismissed the portion of the indictment that was based on that contention, struck all testimony relating to the Dorie Miller project from the record, and instructed the jury to disregard that testimony. The latter direction was repeated in the court's charge to the jury. (6) And, finally, the guilt of the defendant, on the basis of admissible evidence, is clear.

Judgment affirmed.